IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHAWN JOSEPH STAUFFER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1587 |
| | § | |
| MARNA GEARHART, *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shawn Joseph Stauffer, a state inmate proceeding *pro se* and *in forma pauperis*, filed this section 1983 lawsuit against Texas Department of Criminal Justice ("TDCJ") officials and employees alleging violations of his civil rights. The Court granted in part and denied in part defendants' original motion for summary judgment. Pending before the Court is defendants' amended motion for summary judgment, seeking dismissal of plaintiff's remaining claims. (Docket Entry No. 37.) Plaintiff filed a response. (Docket Entry No. 38.)

Based on consideration of the amended motion, the response, the record, and the applicable law, the Court **GRANTS** the amended motion for summary judgment and **DISMISSES** this lawsuit for the reasons that follow.

## I.  FACTUAL BACKGROUND AND CLAIMS

Plaintiff was assigned to the Goree Unit Sex Offender Treatment Program ("SOTP") based on his conviction for attempted aggravated sexual assault of a child.  He complains

that, for three months during his participation in the program, prison mail room officials

confiscated his prepaid CARCRAFT magazines he had received through the mail.  Defendants

informed plaintiff that the publication had been rejected (confiscated) pursuant to Regulation

SOTP 02.06 (the "Regulation"), which provided that, "[]in order to facilitate treatment,

additional standards for offender correspondence have been imposed.  They are as follows:

> A.   No publications other than newspapers and religious material shall be
>      accepted.
>
> B.   Correspondence containing content approving or promoting alcohol
>      [or] drug use shall be rejected for offender receipt.
>
> C.   Correspondence that is sexually suggestive, explicit, and/or provocative
>      in nature shall be rejected for offender receipt.  Sexually explicit and/or
>      provocative correspondence includes, but is not limited to, nudity or
>      partial nudity that is stimulating/exciting or sexually suggestive in
>      nature.
>
> D.   Offenders may not appeal denials to the Director's Review Committee
>      based on these additional restrictions.

(Docket Entry No. 37, Exhibit 1, October 2004 version.)  The Regulation was applicable to

all SOTP offenders such as plaintiff at the time plaintiff's claims arose.  Plaintiff's prison

grievances, complaining that the confiscated publications constituted educational and

vocational materials, were unsuccessful.

Plaintiff further asserts that, during the same three months, prison mail room officials

utilized the Regulation to confiscate his other prepaid subscription publications – HOTROD,

PERFORMANCE PRODUCTS, JEG'S HIGH PERFORMANCE PARTS, and PERFORMANCE PRODUCTS.

Plaintiff claims that defendants confiscated the publications without first reviewing their content for appropriateness under the Regulation.

Plaintiff seeks a declaratory judgment that SOTP 02.06 violated his right to free speech, and that the Regulation's targeted application to SOTP sex offenders constituted discrimination and disparate treatment in violation of his equal protection rights. Plaintiff requests nominal, punitive, and compensatory damages in an amount of $1 million against each defendant. Defendants argue that plaintiff's claims are groundless and should be dismissed.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000).

3

## III.  ANALYSIS

A.    Free Speech Claim

Plaintiff asserts that the Regulation denied him free speech by acting as a "blanket ban" on his right to receive magazines and other publications during his participation in the program.  He claims that the confiscated materials would have furthered his educational and vocational interests.  Defendants contend that the Regulation did not violate plaintiff's free speech rights because it was reasonably related to a legitimate penological interest in rehabilitating convicted sexual offenders such as plaintiff.

Plaintiff, as a state inmate, enjoys no unfettered constitutional right to receive magazines and other publications while imprisoned.  Although prisoners retain some rights under the First Amendment, prison officials are authorized to monitor and limit activities that might restrict their exercise of free speech if such restrictions promote a legitimate penological interest. *See Shaw v. Murphy*, 532 U.S. 223 (2001).  The Supreme Court has made clear that prisoners retain only those First Amendment rights of speech which are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system.   *Hudson v. Palmer*, 468 U.S. 517, 523 (1984).  Thus, when a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

4

Satisfying the *Turner* test requires a court to determine: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates"; and (4) whether there is an "absence of ready alternatives." *Id.* at 89–90 (citations and internal quotation marks omitted).

In an affidavit submitted in support of defendants' amended motion for summary judgment, defendant Enobong Inyang testified as follows:

> I am an LPC [a licensed professional counselor], licensed to practice counseling in the state of Texas. I am presently employed as a Program Supervisor III in the Sex Offender Treatment Program ('SOTP' or 'the Program') of the Texas Department of Criminal Justice – Rehabilitation Programs Services. I am not receiving any pay, save my usual salary, for review of records or preparation of this report.

> I am making this affidavit in connection with the Civil Action No. 4:08-CV-1587; Shawn Joseph Stauffer v. Marna Gearhart, et al.; In the United States District Court for the Southern District of Texas, Houston Division. To prepare this affidavit, I have reviewed the relevant Individualized Treatment Plan ('ITP') of Shawn Joseph Stauffer, TDCJ #1321818, and Plaintiff's Original Complaint. I am familiar with TDCJ policies and procedures with respect to the SOTP.

> The SOTP is an 18-month, highly structured and intensive mandatory program for qualifying offenders. Currently, the program is offered at only the Hightower and Goree Units for male offenders. It employs what is called a 'therapeutic community' concept of treatment, meaning that while participants are enrolled in the program, participants co-exist exclusively in a community of other participants and treatment professionals. Participants engage in the

5

program 24 hours a day, seven days a week, leaving essentially no time for any other activities.

The program consists of 15 months of psychosocial modules involving individual activities, overlapping with 15 modules of group paperwork involving group activities. Activities include reading, writing essays, presentations, group activities, and the completion of all group worksheets.

Participants enter the program in the last 18 months of their incarceration, and are released from TDCJ custody no later than one or two months after completion of the program, preferably less. Once they begin the program, participants are not returned to the TDCJ units in which they were housed before they entered the program. This is done to maximize the effectiveness of the program. The goal of the program is to help participants understand and control the sexual urges that resulted in [their] committing sexual crimes. There is a real danger that allowing participants to return to general population after completing the program will erode whatever progress they made while in the program due to the corrupting influence of other, non-participant offenders. Releasing participants at a time when their personal progress is at its greatest is of the highest priority, not only for their own benefit in assimilating back into the free world, but also for the safety of whatever communities to which they return.

One of the requirements of the program is that participants cannot engage in any vocational activities or programs while enrolled in the SOTP, except for GED programs made available through the Wyndham School District. Any enrollment in vocational programs must be completed before the start of the participant's enrollment in the SOTP. One reason for this is that, as stated above, participants in the program will be spending all of their time and energy fulfilling the requirements of the program and trying to maximize its effectiveness. Another reason for this is that allowing participants to engage in vocational programs while enrolled in the program would defeat the therapeutic community, since vocational programs contain offenders who are not in the SOTP, and such offenders would erode whatever progress the participant has made.

The same thing is said for outside reading materials. While the program cannot exclude all outside materials, the program at the time in question in this lawsuit, February to April, 2008, limited the materials participants can receive

6

to the bare essentials: newspapers and religious materials. Vocational materials, even if they do not contain sexual material, are excluded because vocational programs must be completed by the time a participant enters the SOTP. Because vocational programs must be completed by the time participants enter the program, there will be no vocational materials for the participant to receive. As stated above, the reason [that] vocational programs must be completed first is that participants are already engaged in an extremely intensive rehabilitation program. Additional study outside of the program will only serve to distract participants from maximizing the program's effectiveness.

Publications such as 'Car-Craft,' 'Hot-Rod,' and 'Low Rider' magazines are excluded for several reasons. First, all vocational programs must be completed prior to entering the SOTP. Second, such publications often contain sexually explicit material which strongly undermines the goals of the program.

Finally, I would like to add that, in my opinion, and in the opinion of many participants who have completed the program, 18 months is far too brief a period in which to cover all of the material of the program, and for participants to gain a sophisticated understanding and command over the sexual urges and habits that caused them to be convicted for sexual crimes. It is of the highest priority that participants enrolled in the Sex Offender Treatment Program use those 18 months to their utmost and not be allowed to engage in unnecessary distractions.

(Docket Entry No. 37, Exhibit 2.)[1]

Defendants' probative summary judgment evidence establishes that the Regulation satisfies the *Turner* factors. There is a valid, reasonable connection between the Regulation and the State's legitimate penological interest in rehabilitating convicted sex offenders through the SOTP. As shown by the affidavit testimony of Inyang and Jorno, the program

---

[1]A second affidavit, submitted by Joseph Bon Jorno, SOTP Program Manager II, contains substantially the same testimony and opinions and provides no additional information for purposes of the pending motion. *Id.*, Exhibit 3.

is time and energy intensive, with successful rehabilitation requiring participants to devote all of their time, energy, and focus on completing the program's curriculum within a certain times. As stated in the affidavits, allowing SOTP participants open access to mail-order publications for vocational or other purposes while they are in the program would negatively impact the program's rehabilitative goals and therapeutic community. Nor does plaintiff present probative summary judgment evidence of a ready alternative that would promote the prison's valid penological interests in treating and rehabilitating sexual offenders at a *de minimis* cost.

Moreover, the Regulation did not deny plaintiff alternative means of exercising his right to free speech; his right to pursue vocational interests and receive publications related to his vocational interests and studies remained open until such time as he began the SOTP, and recommenced upon his completion of the program. Moreover, plaintiff was allowed to receive newspapers and religious material while participating in the program. Although a publication would remain subject to rejection if it contained sexually suggestive material, plaintiff does not challenge the constitutionality of that particular provision of the Regulation.

Plaintiff's reliance on the alleged vocational or educational nature of the rejected mail-order publications is undercut by both the fact that participants in the SOTP were not allowed to pursue vocational classes or self-study while completing the SOTP, and that many of plaintiff's mail-order publications were known to contain sexually suggestive material. Nor

8

does plaintiff prevail in arguing that the Regulation was an unconstitutional "blanket ban" on his mail-order publications, as the Regulation allowed plaintiff and other SOTP participants to receive newspapers and religious materials during the program. Additionally, plaintiff presents only conclusory allegations that prison officials rejected his mail-order publications without a content review, and his allegations are insufficient to raise a genuine issue of material fact precluding summary judgment.

Accordingly, plaintiff fails to show that the Regulation violated his First Amendment right to free speech, and defendants are entitled to summary judgment dismissing this claim.

B.    Equal Protection Claim

Plaintiff argues that he was denied equal protection because the Regulation's policy prohibiting mail-order publications for SOTP participants was targeted solely at a specific class of offenders to which plaintiff belonged. Defendants contend that the Regulation does not contravene plaintiff's equal protection rights because convicted sex offenders are not a protected or suspect class, and the Regulation was rationally related to the prison's legitimate penological interests of treating and rehabilitating convicted sex offenders.

The Fourteenth Amendment's equal protection clause commands that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Generally, a government regulation that impinges on fundamental rights protected by the Constitution is reviewed, for equal protection purposes, under a "strict scrutiny" standard. *Rublee v. Fleming*, 160 F.3d 231, 217 (5th Cir. 1998). However,

9

convicted sex offenders are not a protected or suspect class, and thus a prison regulation that impinges on a convicted sex offender's constitutional rights is only subject to a "rational basis" review. *See Wottlin v. Fleming*, 136 F.3d 1032, 1036-37 (5th Cir. 1998); *see also Thornburgh v. Abbott*, 490 U.S. 401 (1989) (holding that the exigencies of prison administration require only that a subject regulation be reasonably related to a legitimate penological interest).

The Fifth Circuit Court of Appeals held in an unpublished opinion that subjecting inmates who are sex offenders to different prison programs or regulations is reasonably related to legitimate penological interests. *Bell v. Woods*, 382 F. App'x 391, 392-393 (5th Cir. 2010). In *Bell*, the Fifth Circuit rejected an inmate's claim that prison regulations restricting sexual offenders from using computers violated the equal protection clause. The Court observed that there were rational reasons why the State might restrict sexual offenders from using computers, such as to prevent sexual offenders from attempting to obtain and distribute sexually-explicit material over the internet or contacting potential victims over the internet.

This same legal analysis – and result – applies to the Regulation here. As established by the uncontroverted affidavit testimony of Inyang and Jorno, the Regulation prevented SOTP inmates from receiving magazines or other published materials that are known to contain sexually suggestive material, which would "strongly undermine[] the goals of the program." The Regulation further promoted a sexual offender's focus on, and successful

10

completion of, the "highly structured and intensive" program by limiting potential distractions during the program. Consequently, defendants have established that the Regulation is rationally related to legitimate penological interests in the rehabilitation and treatment of sexual offenders such as plaintiff.

Plaintiff fails to show that the Regulation constitutes a violation of his equal protection rights, and defendants are entitled to summary judgment dismissing his claim.[2]

## IV.  CONCLUSION

Defendants' amended motion for summary judgment (Docket Entry No. 37) is **GRANTED**, and this lawsuit is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 20th day of June, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

_____

[2]Plaintiff complains in his response that, after filing this lawsuit, he completed the program but was not released to the free world. He states that he was instead selected for civil commitment proceedings under the state sexual predator statute and that his name was given to immigration officials for possible deportation. He argues "it is not hard to conclude" that these actions were in retaliation for his filing this lawsuit. (Docket Entry No. 38, p. 5.) This assertion of retaliation was not raised in the complaint, is not before the Court, and must be pursued by plaintiff through a separate lawsuit.

11